IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DARRYL RIGGINS, # 184051,** | : |
| Plaintiff, | : |
| vs. | :   CIVIL ACTION 08-00157-KD-B |
| **ROBERT BARNES, M.D.,** *et al.*, | : |
| Defendants. | : |

### REPORT AND RECOMMENDATION

Darryl Riggins, an Alabama prison inmate proceeding *pro se* and *in forma pauperis,* filed the instant 42 U.S.C. § 1983 action, which has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  For the reasons set forth below, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

On March 21, 2008, Plaintiff filed his 42 U.S.C. § 1983 Complaint against Defendants Dr. Robert Barnes, Crystal Stabler, R.N., and Nurse Nabb,[1] together with a motion to proceed without

---

[1]On August 5, 2009, this Court allowed Plaintiff to amend his Complaint and add Nurse Hardin as a Defendant in this action. (Doc. 20).  However, Nurse Hardin's service papers have been returned to this Court. (Doc. 29).  On December 1, 2009, Plaintiff filed a Motion for a Default Judgment against Nurse Hardin.  (Doc. 32).  This Motion is DENIED as moot, however, as this action is due to be dismissed.

prepayment of fees.[2] (Docs. 1, 2). On April 10, 2008, this Court ordered Plaintiff to refile his Complaint and motion to proceed without prepayment of fees on this Court's forms, which Plaintiff did on April 21, 2008. (Docs. 3, 4, 5). On August 5, 2009, this Court granted Plaintiff's motion to proceed without prepayment of fees. (Doc. 20). However, given this recommendation and for the reasons set forth herein, the grant of *in forma pauperis* status is hereby **REVOKED**.

Title 28 U.S.C. § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* in civil actions under certain circumstances. It provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Under § 1915(g), "if a prisoner has had three or more cases or appeals dismissed for one of the recited reasons, he cannot proceed *in forma pauperis*." Doss v. Henry, 2008 WL 5231863, *1 (N.D. Fla.

---

[2] Plaintiff initially filed his Complaint on March 21, 2008, but used outdated forms. As a result, on April 10, 2008, this Court ordered Plaintiff to file using current forms. Plaintiff did so on April 21, 2008. (Docs. 3, 4).

2008). "A prisoner who is no longer entitled to proceed *in forma pauperis* must pay the filing fee at the time he initiates the suit, and his failure to do so warrants dismissal without prejudice." Id. (citing Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir. 2001)). "The only exception to this is if the prisoner alleges he is 'under imminent danger of serious physical injury.'" Id.  (citing 28 U.S.C. § 1915; Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004); Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998), *abrogated on other grounds* by Jones v. Bock, 549 U.S. 199 (2007)).

In reviewing Riggins' Complaint, the Court discovered from the records of the United States District Courts for the Southern, Middle, and Northern Districts of Alabama that while incarcerated, Riggins has on at least three occasions had 42 U.S.C. § 1983 actions dismissed pursuant to 28 U.S.C. § 1915 (g).[3] Those actions

---

[3]The Complaint form provided to Riggins  by this Court required him to list his litigation history.  (Doc. 4, Sections IB, IC).  Riggins notified the Court of a single action pending in the federal court system.  This Court's research, however, has revealed a minimum of nineteen other lawsuits filed by Riggins in the United States District Courts for the Southern, Middle, and Northern Districts of Alabama alone.  Rule 11(b) of the Federal Rules of Civil Procedure "forbids lying in pleadings, motions, and other papers filed with the court."  Zocaras v. Castro, 465 F.3d 479, 484 (11th Cir. 2006).  "Rule 11(c) provides for sanctions concerning misrepresentations made in papers filed with the court under Rule 11(b)."  Id. at 490; Fed. R. Civ. P. 11(c).  Rule 41(b) "expressly authorizes the involuntary dismissal of a claim for Plaintiff's failure to abide by court orders or the Federal Rules of Civil Procedure."  Zocaras, 465 F.3d at 490 (citing State Exch. Bank v. Hartline, 693 F.2d 1350, 1352 (11th Cir. 1982)).

are as follows:  Riggins v. Hilbert, et al., CA 02-2184 (N.D. Ala. Feb. 13, 2003); Riggins v. Coody, CA 99-1230 (M.D. Ala Nov. 23, 1999); Riggins v. Hightower, et al., CA 99-0952 (M.D. Ala. Apr. 7, 2000); Riggins v. Hightower, et al., CA 99-0722 (M.D. Ala. Sept. 13, 1999),[4] aff'd (11th Cir. Sept. 27, 2000).

Additionally, "the power of a court to dismiss a claim is inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions." Zocaras, 465 F.3d at 490 (citing Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962)).  For future reference, Riggins is cautioned that providing false or misleading responses to this Court will not be tolerated and will result in sanctions including, but not limited to, dismissal of the action.  See Hood v. Tompkins, 197 Fed. Appx. 818, 819 (11th Cir. 2006) (Eleventh Circuit affirmed the dismissal of a prisoner's § 1983 complaint where the plaintiff lied on the complaint form about his prior filing history); Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998) (noting that the district court did not abuse its discretion by dismissing an action without prejudice where plaintiff "had lied under penalty of perjury about the existence of a prior lawsuit"), *abrogated on other grounds* by Jones v. Bock, 549 U.S. 199 (2007); Wilson v. James, 2009 WL 763563, *3 n.4 (S.D. Ala. 2009) ("[L]ying to the Court about the existence of prior lawsuits is a sufficient basis for dismissing a civil action.").

---

[4]The United States District Court for the Middle District of Alabama dismissed the actions of Riggins v. Robinson, et al., CA 04-0948 (M.D. Ala. Jan. 10, 2005), and Riggins v. McDonnell, et al., CA 04-0130 (M.D. Ala. Dec. 2, 2004), because Plaintiff did not pay the full filing fee when he initiated these actions as required by § 1915(g).  In concluding that § 1915(g) applied to these two actions, the Court for the Middle District relied on its three actions, which are referenced in the body of this recommendation.  Even though the docket sheet in CA 99-0722 does not contain the explicit language that is ordinarily seen indicating that the action was dismissed on one of the grounds found under § 1915(e)(2)(B), the Court for the Middle District noted that the docket itself reflected that CA 99-0722 qualified as such a dismissal.  And it appears to this Court that from the activity reflected on the docket sheet in CA 99-722, i.e., no service on the Defendants, the dismissal was based on a ground

4

Because Riggins has had at least three actions that were dismissed as frivolous, this action can only proceed if he meets § 1915(g)'s exception, which requires that at the time of filing, the prisoner was "under imminent danger of serious physical injury." Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding that the plaintiff must face imminent danger of serious physical injury at the time the complaint is filed, not at a prior time). Thus, the Court's focus is on the period of time during which the Complaint was filed. In the instant case, the filing of Riggins' Complaint occurred between March 18, 2008, when his application to proceed *in forma pauperis* was signed by jail personnel (Doc. 2 at 4), and March 21, 2008, when this Court received his Complaint.[5] (Doc. 1). Riggins' allegations, however, fail to indicate that he was "under imminent danger of serious physical injury" at the time of his filing.

Riggins, an inmate at Holman Correctional Facility ("Holman"), filed this action asserting a claim for inadequate medical treatment relating to the alleged denial of nebulizer treatments to

---

under § 1915(e)(2)(B).

[5] For screening purposes, the Court looks at the time of the filing of Riggins' initial Complaint, not the Amended Complaint that he subsequently filed. Because Riggins did not date his Complaint, nor his application to proceed *in forma pauperis*, the undersigned has looked to the date his application to proceed *in forma pauperis* was signed by jail personnel.

him for his asthma.[6]  (Doc. 4). In his Complaint, Riggins claims that Defendants Nurses Stabler and Nabb initially denied him his prescribed nebulizer treatments for asthma, and then following his complaints, that Dr. Barnes discontinued the treatments altogether. (Doc. 4 at 4-6).  Riggins complains that Nurse Stabler advised him that he did not need the nebulizer treatments and that he would instead be placed on two different inhalers, but Riggins believes that the use of two asthma inhalers is not sufficient treatment for his condition.  (Id. at 4-5).  Riggins is seeking a declaration that Defendants' actions violated his rights, an injunction, compensatory and punitive damages in the amount of fifteen thousand dollars, plus costs, and any additional relief that this Court may deem appropriate.  (Id. at 7).

In addition to the parties' pleadings, this Court has reviewed Riggins' medical records from Holman Correctional Facility, as well as those from North Baldwin Infirmary, for the time period surrounding the filing of Plaintiff's Complaint. (Doc. 15, Exhibit A; Doc. 18). Following a thorough review of those records, the Court is satisfied that Riggins was not "under imminent danger of

---

[6] The Court notes that Riggins made a nearly identical claim in 2004, likewise alleging that he was being denied breathing treatments for his asthma while incarcerated at Kilby Correctional Facility.  See Riggins v. McDonnell, et al., CA 04-945 (M.D. Ala. Jan. 5, 2005).  In dismissing the action, the court noted that Riggins was receiving continuous medical care and found Plaintiff clearly was not "under imminent danger of serious physical injury" at the time he filed the complaint.

serious physical injury" at the time of his filing this lawsuit.

Riggins' medical records reflect that on March 4, 2008, he was evaluated in the Health Care Unit upon his initial arrival at Holman.[7]  (Doc. 15, Exhibit A at CMS079).  Riggins had been previously diagnosed with asthma, and was, at the time of his arrival at Holman, taking twelve different medications which included several medications related to his asthmatic condition. The medications prescribed to treat Plaintiff's asthma included a Qvar inhaler, an Albuterol nebulizer, Singulair and a proventil inhaler. (Doc. 15, Dr. Barnes Affidavit at 3-4, Ex. A at CMS003). Upon Riggins' transfer to Holman, Dr. Barnes continued Riggins' prior prescriptions for breathing treatments, as well as the other medications.  (Doc. 15, Dr. Barnes Affidavit at 4).

According to Dr. Barnes, an Albuterol nebulizer treatment provides a more potent form of inhalant medication for times when a patient experiences a significant episode of respiratory distress. (Id., Dr. Barnes Affidavit at 5).  "Currently accepted standards of care mandate that Albuterol nebulizer treatments should not be provided on a routine basis because of concerns regarding its weakening of a patient's respiratory system, unless warranted by a significant respiratory condition."  (Id.) According to Dr. Barnes, a nebulizer treatment is "warranted in

---

[7]Riggins transferred to Holman from Donaldson Correctional Facility in March 2008.  (Doc. 4 at 4).

those instances when a patient demonstrates clear signs of respiratory distress such as wheezing or when a patient demonstrates a poor rate of oxygen saturation, meaning an oxygen saturation rate of less than 96%." (Id.)

Riggins was evaluated by Nurse Nabb following a request for a breathing treatment on March 10, 2008. After testing Riggins' oxygen saturation and a physical examination, Nurse Nabb concluded, based on his oxygen saturation rate of 99% and the absence of other symptoms, that a breathing treatment was not appropriate on that occasion. (Doc. 15, Dr. Barnes Affidavit at 11; Nurse Nabb Affidavit at 3). Subsequent thereto, Dr. Barnes discontinued the Albuterol Nebulizer breathing treatments for a brief period. (Doc. 15, Dr. Barnes Affidavit at 11-12). On March 16, 2008, Dr. Barnes was contacted by telephone by a member of Holman's medical staff and informed that Riggins had complained of an episode of respiratory distress. (Id.) Dr. Barnes instructed the medical staff to place Riggins on a nasal cannula providing oxygen at a rate of two liters per minute and to observe his condition for a period of two hours. Further instructions were given to the medical staff on how to proceed should Riggins' condition not improve during that observation period. Because Riggins' condition did improve, no further treatment was provided at that time. Riggins was instructed to notify the medical staff immediately if he experienced any shortness of breath. (Id.)

Medical records submitted by Riggins reflect that later on March 16, 2008, he was admitted to the North Baldwin Infirmary for alleged seizure activity, not respiratory issues.[8]  (Doc. 18, Attachment at CMS076, CMS090).  On March 17, 2008, Riggins was examined multiple times by various hospital medical staff, including doctors and nurses, and the records indicate that his breathing sounds were normal, and that there was no respiratory distress or wheezing.  (Id. at CMS082, CMS086, CMS090-91).  On March 18, 2008, Riggins was returned to the Holman Health Unit, where it is noted in the records that he was "snoring," and that "vitals [were] stable."  (Id. at CMS099).  On March 19, 2008, Riggins legibly printed a medical request form seeking medical attention for his sore tongue, stating that he bit it during his "seizure attack" on March 18, 2008.  Riggins complained that he could not chew on that side of his mouth but made no complaints of respiratory or breathing issues.  (Doc. 15, Ex. A at CMS072).

In evaluating whether a prisoner's allegations fall within the exception to the application of 28 U.S.C. § 1915(g), the Eleventh Circuit has directed that "the issue is whether ... [the] complaint, as a whole, alleges imminent danger of serious physical injury."  Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004).

---

[8]It is noted in the North Baldwin Hospital records that there were no witnesses to Plaintiff's "seizure activity," that the EMS denied seeing any seizure activity, and that there had been no such problems or symptoms since arriving at the hospital. (Doc. 18, Attachment at CMS090).

In Skillern v. Paul, 202 Fed. Appx. 343, 344 (11th Cir. 2006), the Court rejected an inmate's request that it "'presume imminent danger' whenever a prisoner complains of a medical issue." In affirming the district court's dismissal of the prisoner's complaint pursuant to 28 U.S.C. § 1915(g), the Eleventh Circuit noted that the prisoner had alleged that the deprivation of his heart medication might result in serious injury, but that he, in his vague statements, had failed to allege any description of the medical condition requiring the medication or that he had even suffered any actual physical injury as a result of not receiving the medication. Id.; cf. Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004) (finding that prisoner with HIV and hepatitis had alleged imminent danger of serious physical injury when prisoner brought claim that his medical treatment had been abruptly stopped and that as a result he "suffered prolonged skin and newly developed scalp infections, severe pain in the eyes and vision problems, fatigue and prolonged stomach pains" and that he would die earlier if not treated).

    A review of Riggins' Complaint reflects that he was not "under imminent danger of serious physical injury" at the time of filing this action. Riggins was receiving medical treatment, and although he complains about the manner and sufficiency of the treatment, Riggins fails to show the Court any injury or damage that he suffered as a result of the treatment. A statement by Riggins that

Defendants were deliberately indifferent to his serious medical need is not sufficient to show imminent danger of serious physical injury.  (Doc. 18 at 3).  Moreover, a complete review of Riggins' medical records from Holman also indicates that at the time he filed this action in March, he was not "under imminent danger of serious physical injury."  In fact, Riggins' medical records from Holman, as well as from the free world hospital, indicate the opposite.

Looking at the record, Riggins' application to proceed *in forma pauperis* in this action was signed by jail personnel on March 18, 2008, one day before Plaintiff complained of a sore tongue and nothing more.  (Doc. 15, Ex. A at CMS072).  In the days immediately preceding, Plaintiff was hospitalized as a result of an alleged seizure, with no respiratory problems noted during any examinations performed by the medical staff at the hospital.  (Doc. 18, Attachment at CMS082, CMS086, CMS090-91).  Plaintiff's allegations fail to indicate that he was "under imminent danger of serious physical injury" at the time of filing this action.[9]

---

[9] Interestingly, on March 26, 2008, Riggins filed a separate action in the United States District Court for the Middle District of Alabama, which action was subsequently transferred to this Court, wherein Plaintiff alleged that inmates in segregation at Holman were being over-medicated by Defendants Richard Allen, Warden Culliver, Warden Folks, W. Bishop, Mr. Myers, C.M.S., Dr. Barnes, Ms. Kabler, R.N., and D.O.N.  (Riggins v. Allen, et al., CA 08-00195 (S.D. Ala May 25, 2008).  According to Riggins, the inmates were being given too much medication and being instructed to take half and save half for later, which presented not only a danger but also a potential disciplinary charge, as inmates are

"The fact that Plaintiff may disagree with the medical treatment that he was receiving fails to show even a constitutional violation, much less that he was actually in danger of serious physical injury. See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting Estelle v. Gamble, 429 U.S. 97, 107 (1976)); Trotter v. Corr. Med. Serv., Inc., 2008 WL 2225696 at *9 (S.D. Ala. 2008) ("It is well-established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs.") (citations omitted).

"In this Circuit, a prisoner who is no longer entitled to proceed *in forma pauperis* must pay the filing fee at the time he initiates the suit, and failure to do so warrants dismissal without prejudice." Doss, 2008 WL 5231863, *2 (N.D. Fla. 2008); Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper

---

not supposed to keep medication in their possession. (Id., Doc. 1, Complaint at 3). Riggins' Complaint was dismissed as he did not show that he was "under imminent danger of serious physical injury" at the time of the filing of the action. (Id., Docs. 10, 11).

procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed in forma pauperis pursuant to the three strikes provision of § 1915(g)."). Because Riggins did not pay the $350.00 filing fee at the time that he filed this action and because he does not meet the "under imminent danger of serious physical injury" exception to § 1915(g), Riggins' action is due to be dismissed without prejudice.

Accordingly, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this **5th** day of **January, 2010.**

                                    **/s/ SONJA F. BIVINS**
                              **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.   *Objection*.   Any party who objects to this recommendation, or anything in it, must, within fourteen days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[10] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

---

[10]The Court's Local rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.